UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                            CASE NO: 2:17-cr-60-FtM-38MRM

WILLIAM PIPER
_____/

## OPINION AND ORDER[1]

Before the Court is Defendant William Piper's Motion to Withdraw Guilty Plea (Doc. 74) and the Government's response in opposition (Doc. 75). For the following reasons, the Court denies Piper's motion.

## BACKGROUND

On January 26, 2017, Lee County Sheriff's Office Detective Dash Lockhart was at a UPS shipping facility in Fort Myers, Florida. Detective Lockhart's canine partner alerted him that a parcel addressed to "Jay Piper" had illegal drugs. Detective Lockhart opened the parcel (per a search warrant) and found about one pound of methamphetamine. Detective Lockhart got another search warrant for the home that the parcel was headed to. Later that day, an officer posed as a UPS driver, delivered the parcel and handed it to Piper.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

Detectives executed the search warrant later that evening. They found Piper in the garage with the identified parcel and the methamphetamine. More methamphetamine was in the home with cash, firearms, and drug paraphernalia. Detectives arrested Piper and several others in the house. Post-*Miranda*, Piper "admitted that he was the intended recipient of the parcel containing methamphetamine, that he in fact opened the parcel, and that he sells methamphetamine." (Doc. 3 at 21).

Six months later, the Government filed a one-count Information against Piper for knowingly and intentionally possessing more than 500 grams of methamphetamine in violation of 21 U.S.C. § 841. (Doc. 2). Piper waived prosecution by indictment. (Doc. 12).

Pertinent here, Piper's husband, Brandon Partridge-Piper, was among those arrested in the sting. But the husband faced only state charges for trafficking in amphetamine. (Doc. 54 at ¶ 56); *see State of Florida v. Brandon Partridge-Piper*, 17-CF-14382. The State of Florida eventually dropped the case with a Notice of Nolle Prosequi allegedly because of "a lack of evidence and the prosecuting agency's inability to prove a prima facie case of actual or constructive possession as to Brandon Partridge-[P]iper." (Doc. 74 at 2). According to Defendant, the State of Florida had "the same facts, circumstances, and controlled delivery of methamphetamine that the United States is currently utilizing and relying upon in [his] Federal Criminal case[.]" (*Id.*).

About two months after the State of Florida filed the Notice of Nolle Prosequi for Patridge-Piper, Judge McCoy held an initial appearance, arraignment, detention, and plea agreement hearing for Piper. (Doc. 10). Piper was present, represented by counsel, and

placed under oath. He pled guilty to the Information's sole count per the Plea Agreement (Doc. 3; Doc. 12; Doc. 13).

Before the plea colloquy, Judge McCoy asked Piper about his mental health and medications to decide his competency to enter a plea. (Doc. 75-1). Piper answered the questions without issue, and neither Piper's attorney nor the Government expressed concern about Piper's competency. Judge McCoy found Piper to be competent to continue with the plea colloquy.

Judge McCoy then examined Piper on the subjects covered in Federal Rule of Criminal Procedure 11. Piper heard Judge McCoy explain his rights during a criminal case and that he would waive those rights by pleading guilty. Piper acknowledged that he understood the charges against him and the potential sentence he faced. He also confirmed that he read the Plea Agreement and reviewed it with his attorney before signing it. The Government then described the factual basis for its case against Piper, and Judge McCoy found an independent basis in fact to support the elements of the charge. Piper also stated that he was pleading guilty of his own volition, and nobody threatened, forced, or intimidated him about his decision. He also said that he was satisfied with his attorney's representation.

After confirming that Piper had no questions and there was nothing else of which the Court should be aware, Judge McCoy made these findings, all which Piper agreed with:

> I find that you, William Piper, are now alert and intelligent, that you understand the nature of the charges against you and the possible penalties, and that you appreciate the consequences of pleading guilty.

> I also find that the facts that the United States is prepared to prove and which by your guilty plea you admit based on the facts in the plea agreement to which there is no objection and our discussion here today, state all of the essential elements of the offenses to which you have pled guilty.
>
> I further find that your decision to plead guilty is freely, voluntarily, knowingly, and intelligently made, and that you have had the advice and counsel of a competent attorney with whom you say you are satisfied.

(Doc. 75-1 at 45:9-25).

Five days later, the undersigned accepted Judge McCoy's recommendation to accept Piper's plea, adjudged him guilty, and scheduled him to be sentenced in September, 2017. (Doc. 16). Before doing so, the undersigned carefully reviewed Judge McCoy's Report and Recommendation, listened to the audio recording of Piper's guilty plea, and considered the record and applicable law.

About two months after the plea hearing, Piper changed attorneys. He hired his husband's attorney, Joseph Viacava, who still represents him. (Doc. 30). It took another six months before the Court held Piper's sentencing hearing because of the parties' requests and scheduling conflicts. (Doc. 40; Doc. 42; Doc. 56; Doc. 58; Doc. 64; Doc. 65; Doc. 67; Doc. 70). At the sentencing hearing on May 7, 2018, Piper told the undersigned that he wanted to move to withdraw his guilty plea. (Doc. 70). The Court continued the sentencing to allow him to file such a motion, which came about six weeks later.

## DISCUSSION

As best the Court can tell, Piper moves to withdraw his guilty plea because he has "numerous meritorious, and substantial defenses" to the charge against him that were never disclosed, or developed, by Piper's previous attorney. (Doc. 74 at 3). According

4

to Piper, he "only became aware of these potential defenses when he learned of the dismissal of his husband's case." (*Id.*). Piper now claims he would not have pled guilty if he knew about Viacava's legal strategy. (*Id.* at 3-4).

A defendant may withdraw an accepted guilty plea before the court sentences him if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). This is no small task. "The defendant bears a heavy burden to show that his guilty plea should be withdrawn." *United States v. McFarland*, 719 F. App'x 908, 912 (11th Cir. 2017) (citation omitted). The burden continues uphill on appeal, as the Eleventh Circuit "review[s] the district court's denial of a motion to withdraw a guilty plea for abuse of discretion and will reverse only if the denial was 'arbitrary or unreasonable.'" *Id.* (citing *United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir. 2006)).

In deciding whether a defendant has met this heavy burden, courts consider the totality of the circumstances surrounding the plea, including (1) whether the plea was knowing and voluntary; (2) whether close aid of counsel was available; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant withdrew his plea. *Id.* (citation omitted). If a defendant falls short on the first two factors, the court need not give "considerable weight" to the rest. *See id.* (internal quotation omitted). Another consideration is the timing of a defendant's motion to withdraw. *See United States v. Luczak*, 370 F. App'x 3, 4 (11th Cir. 2010). Here, each factor weighs against granting Piper's motion.

## A. Knowing and voluntary plea

Because a defendant waives several constitutional rights by pleading guilty, the "court must ensure that the guilty plea is made knowingly and voluntarily to satisfy the

5

requirements of due process." *United States v. Rodriguez*, 751 F.3d 1244, 1254 (11th Cir. 2014) (internal quotations omitted). Courts generally consider three principles in assessing whether a defendant entered a knowing and voluntary plea: "(1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea." *United States v. Hernandez-Fraire*, 208 F.3d 945, 949 (11th Cir. 2000) (internal quotations and citation omitted).

The transcript of the plea hearing reflects that Piper told Judge McCoy he entered the guilty plea on his own volition, he knew the drug charge against him, and understood the consequences of his guilty plea. Piper expressed a clear and unequivocal desire to plead guilty to the crime charged, and Piper gave Judge McCoy no sign to second guess his desire to plead guilty. *See United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during the colloquy are true."); *Luczak*, 370 F. App'x at 4-5 ("A defendant who makes statements under oath at a plea colloquy bears a heavy burden to demonstrate that those statements were false."). Also, Piper does not argue that he falsely answered Judge McCoy's questions at the plea hearing. He states the opposite: "[Piper] was truthful, candid, and did not mislead the Court when he answered all of the question he was asked" by Judge McCoy. (Doc. 74 at 3).

Judge McCoy's thorough questioning of Piper at the plea colloquy also satisfies any remaining concerns on the knowing and voluntariness of Piper's plea. Judge McCoy told Piper of his right to a jury trial, to be represented by counsel, and to confront the witnesses against him if he pled not guilty. He reviewed with Piper the charge he faced,

the penalty associated with the charge, and the Plea Agreement. Piper confirmed that he had reviewed the Information with his attorney, understood its contents, and was satisfied with his legal representation. The Government described the factual allegations it would have been able to prove at trial, to which Piper confirmed were true and correct. Judge McCoy also ensured that Piper was pleading guilty of his own volition. In conclusion, the Court finds Piper entered a knowing and voluntary plea.

**B. Close assistance of counsel**

The next factor the Court considers is whether Piper had the close aid of counsel. Here, Piper had an attorney. Piper does not argue that his attorney at the plea hearing was neither available to nor used by him. *See, e.g.*, *United States v. McCarty*, 99 F.3d 383, 385 (11th Cir. 1996) (finding the defendant had close assistance of counsel where, in part, his attorney was "available and utilized extensively"). The record suggests just the opposite. Piper told Judge McCoy he understood the terms of his plea agreement, had discussed it with his attorney, and that he was satisfied with his representation. *See Medlock*, 12 F.3d at 187; *Luczak*, 370 F. App'x at 4-5. And Piper makes no claim that his previous attorney gave ineffective legal guidance or neglected his obligations as an attorney. The Court finds that Piper entered his guilty plea with the necessary assistance of counsel.

**C. Remaining factors**

Because Piper received close help of counsel and entered his plea knowingly and voluntarily, the Court need not give considerable weight to the final two factors, *i.e.*, conservation of judicial resources and prejudice to the Government. But both factors weigh against Piper withdrawing his plea. The Court delayed Piper's sentencing several

times over a nine-month period largely because Piper was cooperating with the Government. (Doc. 69). Allowing Piper to withdraw this plea and proceed to trial at this late stage would consume greater judicial resources and prejudice the Government. Piper offers no arguments to the contrary.

Most telling is Piper waiting more than a year after pleading guilty to withdraw his plea. *See United States v. Buckles*, 843 F.2d 469, 473 (11th Cir. 1988) ("The longer the delay between the entry of the plea and the motion to withdraw it, the more substantial the reasons must be as to why the defendant seeks withdrawal."). Equally weighty against withdrawal is Piper waiting until he received the Government's motion for a sentence reduction for his cooperation to first mention at the sentencing hearing he wanted move to withdraw his plea. *See, e.g., United States v. Ross,* 147 F. App'x 936, 940 (11th Cir. 2005) (finding the district court did not abuse its discretion in denying a motion to withdraw a guilty plea when the defendant waited until "well after he pled guilty and shortly before sentencing" to file the motion). And finally, Piper was in no rush to file that motion because it did not come for another six weeks after the sentencing hearing.

The record further suggests that buyer's remorse – not newly learned defenses – drives Piper's desire to withdraw his plea. Timing again is important for context. Viacava has represented Piper since August 2017. Yet the motion to withdraw the plea did not come for another ten months and more than a year after the State of Florida dismissed the case against Piper's husband. To the extent Piper believes the unspecified defenses used to exonerate his husband equally apply to his case, the Court is unpersuaded. Piper claims the State of Florida could not convict his husband because it lacked evidence to prove he had actual or constructive possession of the drugs. (Doc. 74 at 3). Here, Piper

admitted post-*Miranda* that the methamphetamine was his, that he opened the parcel, and sells the drug. (Doc. 3 at 21 (admitting "that he was the intended recipient of the parcel containing methamphetamine, that he in fact opened the parcel, and that he sells methamphetamine"). He made similar admissions during the plea hearing:

> THE COURT: Sir, do you admit that you knowingly possessed methamphetamine as charged in Count 1 of the Information?
>
> THE DEFENDANT: Yes, sir yes, Your Honor.
>
> THE COURT: Sir, do you admit that you intended to distribute that methamphetamine?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And, sir, do you admit that the weight of the methamphetamine you possessed was more than 500 grams?
>
> THE DEFENDANT: Yes, sir.

(Doc. 75-1 at 40:25-41:9). The evidence is sufficient and strong. In addition, Piper cites no case law as to why he has presented the Court with a fair and just reason to withdraw his plea. Piper offers nothing more than conclusory allegations and wishful conjecture on the existence of exculpatory defenses.

In conclusion, a defendant does not have an unfettered right to retract a guilty plea and he bears the burden to show a fair and just reason for withdrawal. Because Piper has failed to meet this threshold, the Court denies his motion to withdraw his guilty plea under Rule 11(d)(2)(B).

Accordingly, it is now

**ORDERED:**

(1) Defendant William Piper's Motion to Withdraw Guilty Plea (Doc. 74) is **DENIED**.

(2) The Clerk is **DIRECTED** to schedule Piper's sentencing hearing for **September 17, 2018, at 1:30 p.m.**

**DONE AND ORDERED** in Fort Myers, Florida on this 20th day of July, 2018.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record